**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JEREMY MICHAEL DUFORT**                    **CIVIL ACTION**

**VERSUS**                                                      **No. 20-345**

**AQUEOS CORPORATION**                         **SECTION I**

## <u>ORDER & REASONS</u>

Before the Court is defendant Aqueos Corporation's ("Aqueos") motion[1] to transfer this case to the United States District Court for the Western District of Louisiana, Lafayette Division, pursuant to 28 U.S.C. § 1404(a). For the following reasons, the motion is denied.

## I.

This litigation arises from lower back injuries that plaintiff, Jeremy M. Dufort ("Dufort"), allegedly sustained as a commercial diver and Jones Act seaman in September and October 2019 in Morro Bay, California.[2] During that time period, Dufort was employed by Aqueos.[3] Dufort alleges that his injuries were sustained in connection with his assignment aboard the DSV DANNY C, a vessel that Aqueos manned, provisioned, and controlled.[4] Dufort has asserted claims of negligence and unseaworthiness against Aqueos, and he seeks payment for maintenance and cure, as well as personal injury damages.[5]

---

[1] R. Doc. No. 6.
[2] *See* R. Doc. No. 1, at 2.
[3] R. Doc. No. 4, at 5–6.
[4] *See* R. Doc. No. 1, at 2.
[5] *Id.* at 4–5.

## II.

Aqueos moves the Court to transfer this case to the Western District of Louisiana, Lafayette Division, pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

When applying the provisions of § 1404(a), the court must first determine whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*]. If this requirement is satisfied, the court must then determine whether a transfer is appropriate. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) [hereinafter *Volkswagen II*].

The moving party has the burden of showing "good cause" for a transfer by satisfying the statutory requirements of § 1404(a) and "clearly demonstrat[ing] that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Volkswagen II*, 545 F.3d at 315 (quoting § 1404(a)). "[W]hen the transferee court is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*; *see also In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) ("[I]t is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative."). "The district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

To determine whether a transfer is warranted, courts consider several private and public interest factors:

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." . . . The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Volkswagen II*, 545 F.3d at 315 (citations omitted). The foregoing list is not exhaustive or exclusive, and no one factor is dispositive. *Id.*

### III.

As a threshold matter, Dufort does not dispute that this case could have been filed in the Western District of Louisiana.[6] However, Dufort argues that Aqueos has failed to demonstrate that transferring the case to the Western District would be clearly more convenient.[7]

The Court must decide whether Aqueos has established good cause for its requested transfer, and it must determine whether the Western District is clearly a more convenient forum. The Court will weigh the private and public interest factors separately.

---

[6] R. Doc. No. 7, at 4, 7.
[7] *See id.*

### A. Private Interest Factors

#### i.    *Relative Ease of Access to Sources of Proof*

"Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue." *Uniloc USA, Inc. v. Distinctive Dev. Ltd.*, 964 F. Supp. 2d 638, 645 (E.D. Tex. 2013) (citing *Volkswagen II*, 545 F.3d at 316). Although modern technology makes it easier to access certain sources of proof than it was in the past, this development "does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, Aqueos must show that transfer to the Western District will result in more convenient access to sources of proof. *Garrett v. Hanson*, No. 19-307, 2019 WL 6920818, at *5 (E.D. Tex. Dec. 19, 2019).

Aqueos argues that this factor supports a transfer because Aqueos's only office in Louisiana is in Broussard, which is within the Western District, and Dufort's personnel file and other employment-related records are located there.[8] Dufort asserts, in response, that these reasons are not dispositive, in light of Aqueos's national presence and technological advancements in document exchange.[9]

Although certain records pertaining to Dufort's employment with Aqueos may be physically located in Aqueos's Broussard office, Aqueos has not explained how a transfer to the Western District would make access to these records more convenient,

---

[8] *See* R. Doc. No. 6-1, at 4; R. Doc. No. 6-2, at 2 ¶¶ 9; R. Doc. No. 7, at 5. Aqueos is a California corporation that has its corporate headquarters in Santa Barbara, California. R. Doc. No. 6-2, at 1 ¶ 7.
[9] *See* R. Doc. No. 7, at 5.

particularly when the documents will likely be accessible electronically.[10] *See Pruitt v. Bruce Oakley, Inc.*, No. 18-8621, 2019 WL 2437182, at \*4 (E.D. La. June 11, 2019) (Fallon, J.) ("[A]dvances in technology for document copying and storage makes [sic] ease of access to sources to proof a near non-issue."); *Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 688 (W.D. Tex. 2013) (finding that this factor did not weigh in favor of transfer where the movant failed to explain how transfer "would reduce the burden for either party in terms of producing the necessary documents, which are likely to be exchanged electronically").

In addition, Aqueos has not provided any information regarding the evidentiary value of these records or the volume of records that would be relevant. *See Hammers v. Mayea-Chang*, No. 19-181, 2019 WL 6728446, at \*7 (E.D. Tex. Dec. 11, 2019) ("The movant bears the burden to show that transfer will result in more convenient access to specifically-identified and material sources of proof. A movant fails to meet that burden when it merely offers generalized statements that do not specify the format, relevance, or identity of particular documents or physical evidence.") (internal citation omitted) (collecting cases). Even assuming that these records would be used as sources of proof in this litigation, there has been no indication by Aqueos that electronic access to these records would be prohibitive.[11]

---

[10] The Court also expects both parties to make required initial disclosures pursuant to Federal Rule of Civil Procedure 26.

[11] In addition, courts have found that the location of records and other documentary evidence in Jones Act personal injury cases is not a compelling reason for a transfer, given the ease of access to such evidence. *See Bennett v. Moran Towing Towing Corp.*, 181 F. Supp. 3d 393, 399 n.3 (S.D. Tex. 2016) (explaining, in a personal injury case under the Jones Act, that access to documentary evidence "is rarely a significant

Aqueos has also not identified any physical evidence that it intends to use at trial, much less any that would be more conveniently accessed in the Western District.[12]

Accordingly, Aqueos has not demonstrated that a transfer would result in a more convenient access to sources of proof.

### ii.    Availability of Compulsory Process to Secure Witnesses

Rule 45 of the Federal Rules of Civil Procedure governs a district court's subpoena power. A district court can subpoena a person to attend a trial, hearing, or deposition anywhere within 100 miles of where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1)(A). A district court can also subpoena parties and their officers to attend a trial, hearing, or deposition within the state where they reside, are employed, or regularly transact business in person. Fed. R. Civ. P. 45(c)(1)(B)(i). Non-party witnesses can be compelled to attend a trial in the state where they reside, are employed, or regularly transact business in person, as long as their attendance would not require them to "incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(ii).

---

factor in a personal injury case because such actions are 'unlikely to require extensive paper discovery or additional difficulties in accessing sources of proof.'") (quoting *Barnes v. Romeo Papa*, LLC, No. 12-365, 2013 WL 3049236, at *2 (S.D. Tex. June 17, 2013)) (collecting cases).

[12] As previously stated, Dufort alleges that his injuries were sustained in connection with his assignment aboard the DSV DANNY C in Morro Bay, California. R. Doc. No. 1, at 2. Assuming that the vessel would be a relevant source of proof, though neither party has identified it as such, the parties have not provided any information as to its physical location.

Aqueos's registered office in Louisiana is in Broussard, and Dufort resides in Abbeville, Louisiana.[13] Therefore, with respect to the parties in this case, both the Eastern District and the Western District have the same subpoena power. *See* Fed. R. Civ. P. 45(c)(1)(B)(i).

The extent of each district's subpoena power is also equal with respect to the non-party witnesses who have been identified. Aqueos has advised that two of its five employees who worked with Dufort—and who will "likely be witnesses in this case"— reside in the Western District.[14] The remaining three co-workers reside in Texas and California.[15] Three of Dufort's four retained experts—his forensic economist, treating physician, and forensic psychiatrist—live or work in Louisiana, and two of them practice in New Orleans.[16] Dufort's fourth expert lives in Montana.[17]

Both the Eastern District and the Western District can command the trial attendance of the five identified non-party witnesses who live or work in Louisiana, as long as their attendance would not cause the witness to incur substantial expense.[18] Neither district can command the trial attendance of the out-of-state non-

---

[13] R. Doc. No. 4, at 5; R. Doc. No. 6-2, at 9.

[14] *See* R. Doc. No. 6-1, at 6; R. Doc. No. 6-2, at 2 ¶ 12. Aqueos has not indicated that these individuals are its officers. It is apparent from Aqueos's motion that these individuals are non-party witnesses. *See* R. Doc. No. 6-1, at 4.

[15] R. Doc. No. 6-2, at 2.

[16] R. Doc. No. 7, at 4. Dufort asserts that he "has no information of who may be retained as experts" by Aqueos because discovery has not yet taken place. *Id.* at 6. Dufort broadly suggests that there may be additional witnesses who reside in the Eastern District, *see id.*, but the Court does not find this speculation compelling with respect to the transfer analysis.

[17] *Id.* at 4.

[18] The parties have not argued that any witness would incur substantial expense from his or her trial attendance.

party witnesses.[19] In addition, both the Eastern District and the Western District can command the attendance of non-party witnesses at a deposition that takes place within 100 miles of where the witness lives, works, or regularly transacts business in person.

This factor also does not demonstrate that the Western District is clearly a more convenient forum.

### iii.    Cost of Attendance for Willing Witnesses

The Court must also consider the cost of attendance for willing witnesses. As the Fifth Circuit has explained, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205. The distance between this Court and the Western District, Lafayette Division by car is, at a minimum, approximately 130 miles, so the inconvenience factor is heightened for each witness who would be required to travel.

Regardless of whether this case proceeds in the Eastern District or the Western District, some non-party witnesses will have to travel. Comparatively, the cost of

---

[19] Neither Aqueos nor Dufort has made any indication that their identified witnesses who live outside Louisiana are employed or regularly transact business in person in Louisiana.

attendance in the Western District would be less for two of Aqueos's identified potential witnesses who reside in the Western District, while the cost of attendance in the Eastern District would be less for two of Dufort's proposed experts who practice in New Orleans.[20] The remaining witnesses who have been identified reside in Baton Rouge, Texas, California, and Montana, and neither party has argued that litigating the case in either the Eastern District or the Western District would reduce their attendance costs.[21]

The Court finds this factor to be neutral.

### iv. All Other Practical Problems

Finally, the last private interest factor requires the Court to consider all other practical problems that make trial "easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315. This factor is neutral, as the case is still in the early stages of litigation, and neither party has suggested that the Court's ruling on this motion would cause undue delay or prejudice.

---

[20] Aqueos argues that the cost of attendance for Dr. Najeeb Thomas, Dufort's treating physician who practices in New Orleans, is not a compelling reason against transfer because Dufort "can simply offer the video deposition of Dr. Thomas into evidence." R. Doc. No. 10, at 3. While this option may be available, Dufort may choose to present Dr. Thomas as a live witness, rather than by video deposition.

[21] The Court notes that the parties have not provided any information as to whether any overnight stays would be required or whether any lodging expenses would need to be incurred for any witness. The Court also notes that it will not consider the location of counsel to determine whether transfer is appropriate, as it is an improper and irrelevant factor. *See In re Horseshoe Entm't*, 337 F.3d at 434.

## B. Public Interest Factors

### i.     *Local Interest in Having Localized Interests Decided at Home*

Aqueos argues that this factor weighs in favor of a transfer because of the location of its Louisiana office and Dufort's residence, while Dufort contends that these considerations are not dispositive.[22]

The Court finds that this factor weighs slightly in favor of the requested transfer. Neither district has a "factual connection" to the events that gave rise to this suit, as Dufort's injury was allegedly sustained in Morro Bay, California. *See Volkswagen II*, 545 F.3d at 318. However, both Aqueos's Louisiana office and Dufort's residence are in the Western District. Thus, it is arguable that the Western District may have more local interest in this case than does the Eastern District.

### i.     *Administrative Difficulties Caused by Court Congestion; Forum Familiarity with the Governing Law; and Avoidance of Unnecessary Foreign or Conflict-of-Laws Problems*

These factors are neutral. The Court is not aware of any docket congestion in the Western District, nor are there any difficulties flowing from court congestion in the Eastern District. It also appears that there are no foreign or conflict-of-laws issues in this case.[23] As to the familiarity of the forum with the governing law, Dufort argues that this factor weighs against a transfer because the Eastern District is well-versed in federal maritime law.[24] However, the Eastern District is no less equipped than the Western District to analyze and apply general maritime law.

---

[22] R. Doc. No. 6-1, at 5; R. Doc. No. 7, at 6.
[23] *See* R. Doc. No. 7, at 6.
[24] *See id.* at 5–6.